UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDA G.,

              Plaintiff,              Case No. 2:23-CV-12478
                                          District Judge Stephen J. Murphy, III
v.                                Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18), AND AFFIRM THE COMMISSIONER'S DECISION AND ORDER EXPEDITING BRIEFING ON ANY OBJECTIONS

**I.     RECOMMENDATION AND ORDER**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment

(ECF No. 18), and **AFFIRM** the Commissioner's decision.

Given the narrow scope of the appeal of the Commissioner's decision, and

the relatively small number of issues in this report, I find good cause to

**EXPEDITE** the briefing of any objections.  Any objections will be due 10 days

from the date this report is entered, and responses to the objections will be due 10

days after that, as will be detailed below with dates certain.

## II.    REPORT

Plaintiff Ronda G., via counsel, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 18), and the administrative record (ECF No. 6).

### A.    Background and Administrative History

On September 9, 2019, Plaintiff filed for Title II, Disability Insurance benefits, alleging a disability beginning August 8, 2016.  (ECF No. 6-1, PageID.35.)  The claim was initially denied on November 22, 2019, and after Plaintiff filed a motion for reconsideration, denied again on May 21, 2020.  (*Id.*) On June 17, 2020, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  ALJ Colleen M. Mamelka conducted a telephonic hearing on January 19, 2021, at which Plaintiff and Vocational Expert Amelia Shelton testified.  (ECF No. 6-1, PageID.53.)   On February 8, 2021, the ALJ issued an unfavorable decision.  (ECF No. 6-1, PageID.32.)  The Appeals Council denied Plaintiff's request to review and Plaintiff appealed the ALJ's decision to federal court.  On August 24, 2022, Judge Robert H. Cleland entered a stipulated

2

order to remand to the Commissioner under sentence four of 42 U.S.C. § 405(g).
(ECF No. 6-1, PageID.890.)

On remand, the Appeals Council issued an order vacating the decision of the
Commissioner and remanding the case to an ALJ to "reconsider the medical
opinions of Dr. Griffin."  (ECF No. 6-1, PageID.894.)  The Appeals Council noted
that while the ALJ had addressed the supportability factor, the ALJ had not
considered the consistency factor, that is, "how the medical source's opinion is or
is not consistent with the evidence from other medical and nonmedical sources."
(*Id.*)

Thus, ALJ Mamelka conducted another telephonic hearing on February 21,
2023.  (ECF No. 6-1, PageID.852.)  Plaintiff testified again, along with Vocational
Expert Judith Findora.  (*Id.*)  On March 22, 2023, ALJ Mamelka issued a second
unfavorable decision, denying Plaintiff's claim for disability benefits.  (ECF No. 6-
1, PageID.834-844.)  The ALJ found that Plaintiff last met the insured
requirements of the Social Security Act on September 30, 2018, and that Plaintiff
did not engage in substantial gainful activity from August 8, 2016, through her date
last insured (DLI) of September 30, 2018.  (ECF No. 6-1, PageID.835.)  The ALJ
also found that from August 8, 2016 through September 30, 2018, the claimant had
severe depression and anxiety.  (*Id.*)  Nonetheless, the ALJ found that Plaintiff "did
not have an impairment or combination of impairments that met or medically

3

equaled the severity of at least one of the impairments listed in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  (ECF No.

6-1, PageID.836.)  Finally, the ALJ found that during the relevant time period,

Plaintiff had no physical limitations, but that "in terms of her mental work

capacity, . . . [she] was limited to simple routine tasks that were performed in a

work environment free of fast-paced production requirements."  (ECF No. 6-1,

PageID.837.)  The ALJ continued that Plaintiff "could only occasionally make

simple, work-related decisions and tolerate occasional routine workplace changes.

The claimant could occasionally interact with coworkers and supervisors; however,

she could not interact with the public."  (*Id.*)  The Appeals Council declined to

assume jurisdiction, making the ALJ's March 22, 2023, decision the final decision.

(ECF No. 6-1, PageID.819-820.)

    Plaintiff filed this action on October 2, 2023, and the matter was referred to

me for issuance of a report and recommendation on December 6, 2023.  (ECF No.

9.)

### B.    Plaintiff's Medical History

    The administrative record contains approximately 436 pages of medical

records.  (ECF No. 6-1, PageID.382-818 [Exhibits 1F-12F]).  These materials were

available to the ALJ at the time of her March 22, 2023 decision, and will be

discussed in detail, as necessary, below.

## C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6ᵗʰ Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6ᵗʰ Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6ᵗʰ Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6ᵗʰ Cir. 2007)).

### D.    Analysis

Plaintiff focuses her appeal on two arguments:

1. The ALJ's rationale for finding the opinion of treating physician Stacie Griffin, MD, unpersuasive is not supported by substantial evidence where the ALJ ignored relevant evidence consistent with Dr. Griffin's opinion.

2. The ALJ erred to the extent she found Plaintiff's allegations not supported because she did not seek specialized psychiatric care during the relevant period.

The Court should reject both arguments, find that the ALJ's decision is supported by substantial evidence, and **GRANT** Defendant's motion for summary judgment.

### 1.  Treatment of Dr. Stacie Griffin's Opinion

Plaintiff first challenges the ALJ's evaluation of Dr. Griffin, which the ALJ discussed before determining Plaintiff's residual functional capacity ("RFC"). Plaintiff argues that the ALJ mischaracterized the record and failed to discuss evidence that contradicted her findings.  On Plaintiff's first appeal, after this Court remanded to the Commissioner, the Appeals Council remanded to the ALJ, with particular comment that although the first opinion addressed the supportability factor, the ALJ had not considered the consistency factor and how Dr. Griffin's "opinion is or is not consistent with the evidence from other medical and nonmedical sources."  (ECF No. 6-1, PageID.894.)  Plaintiff now acknowledges that the ALJ's March 2023 opinion is more extensive than her prior opinion, but argues that the ALJ nonetheless still "skipped significant relevant medical findings when assessing Dr. Griffin's opinion and mischaracterized several other portions of the record when comparing Dr. Griffin's opinion to the overall evidence."  (ECF No. 10, PageID.1302.)

### a.  ALJ's Report

In determining whether the ALJ mischaracterized or ignored parts of the record while evaluating Dr. Griffin's opinion, I will first begin by detailing the ALJ's description of Dr. Griffin's opinion. The ALJ noted that Plaintiff began seeing Dr. Griffin, a family practitioner, in August 2016 for a wellness check.

(ECF No. 6-1, PageID.838.)  The ALJ summarized that Dr. Griffin observed "no abnormal mood or behaviors," but was being treated primarily for obesity and depression.  Dr. Griffin encouraged Plaintiff to diet and exercise, prescribed Phentermine for weight loss, and continued Plaintiff's prescription of Fluoxetine for depression.  (*Id.*)  The ALJ noted that when Plaintiff returned a month later, she had lost 12 pounds and "in terms of [Plaintiff's] concentration and persistence, [Plaintiff] told Dr. Griffin that she had been physically and mentally able to 'push mow' two acres of land." (*Id.*)  When Plaintiff returned in December, she reported that she was experiencing sleep disturbances, but "also reported that she was doing aerobics exercise (i.e., Zumba) and taking walks for exercise." (*Id.*)  Dr. Griffin continued the Fluoxetine and additionally prescribed medications for insomnia. (*Id.*)  The ALJ noted that there was no indication that Plaintiff's medications were not effective, that she was oriented, and that her mood and affect were normal. (ECF No. 6-1, PageID.839.)  The ALJ also noted that when asked, Plaintiff had said she felt depressed but not anxious.  (*Id.*)

The ALJ recounted that in February 2017 Plaintiff was treated primarily for insomnia and obesity, and that it appeared her treatment was effective because her medications and dosages were not adjusted.  (ECF No. 6-1, PageID.839.)  At this appointment her mood and affect were normal, and the ALJ stated that "[i]t did not appear [Plaintiff] was too anxious about leaving her home because [she] reported

8

that she was planning a trip to the outer banks of North Carolina in March 2017."
(*Id.*)

The ALJ noted that Plaintiff "began to report severe anxiety starting around April 2018" when she told Dr. Griffin that she was afraid to leave her house." (*Id.*) Nonetheless, Dr. Griffin "observed that [Plaintiff] appeared to be oriented," her "mood and affect were appropriate," and her "judgment was intact." (*Id.*) The ALJ recounted that Plaintiff "told Dr. Griffin that she was not engaged in mental health therapy," and that Dr. Griffin prescribed medication for anxiety (*Id.*)

The ALJ next wrote that:

The claimant continued to report severe uncontrolled anxiety symptoms in May, June, and July 2018; however, Dr. Griffin observed no abnormal behaviors while the claimant was examined.  In terms of care, Dr. Griffin adjusted the claimant's medications. Specifically, the claimant was prescribed medications such as Buspirone, Effexor, Paxil, and Trazodone. The claimant reported that her symptoms improved with medications. There was no evidence she had required inpatient psychiatric care or had engaged in formal mental health care during the timeframe at issue.

(ECF No. 6-1, PageID.839.)  The ALJ noted that when she was seen in August 2018, she reported having chest pains but her electrocardiogram was normal. Noting that her mental health examinations remained the same, the ALJ stated that "[h]er care provider observed that despite the claimant's presentation, the claimant's attention, thoughts, behavior, and judgment were intact." (*Id.*)

Plaintiff's Title II insurance lapsed on September 30, 2018.  The ALJ found noteworthy that on October 5, 2018, Plaintiff reported to Dr. Griffin that she felt

guilt, excessive worry, and a sense of "impending doom," but that she was oriented to person, place, and time.  Further, the ALJ wrote:

> Dr. Griffin observed the claimant did not appear to be excessively anxious or depressed. Specifically, Dr. Griffin noted that the claimant's affect and mood were normal. Dr. Griffin observed the claimant's insight and judgment were also normal. Dr. Griffin noted that despite the severe limitations described by the claimant, the claimant was not engaged in mental health therapy. Dr. Griffin did not recommend a psychiatric evaluation and observed the claimant's anxiety and depression symptoms were controlled on Buspirone and Effexor in October 2018."

(*Id.*)  The ALJ reported that it appeared that Plaintiff's mental work function "might have declined after her Title II insurance lapsed" and that it did "not look like she started to go to mental health therapy until July 2019[,]" but that the evidence from the relevant timeframe supported the mental work capacity that she adopted.  (ECF No. 6-1, PageID.840.)

The ALJ found that the evidence supported a finding that Plaintiff's depression and anxiety were severe, but the diagnosis of post-traumatic stress disorder was not supported during the relevant timeframe, noting that Plaintiff was not treated for PTSD until 2019.  (ECF No. 6-1, PageID.840.)  With respect to Dr. Griffin, the ALJ noted:

> Dr. Griffin's opinion is not consistent with what was reported by the claimant, observed by other care providers, or even with Dr. Griffin's own observations during several visits with the claimant during the timeframe at issue. As I have described throughout this finding, Dr. Griffin's opinion is not entirely supported by the evidence that shows the claimant's behavior and moods were normal during treatment visits.

(ECF No. 6-1, PageID.840.)

### b. Alleged Mischaracterizations and Omissions

Plaintiff argues that the ALJ's rationale for discounting Dr. Griffin's opinion is not supported by substantial evidence where the ALJ allegedly mischaracterized several portions of the record. However, Plaintiff fails to show any significant or even actual mischaracterizations. Instead, as Defendant argues, she "nitpicks the ALJ's thorough evaluation of Dr. Griffin's opinion, but fails to show the ALJ erred based on the few records she cites." (ECF No. 18, PageID.1341.)

For example, the ALJ noted that Plaintiff's behavior and moods were normal during treatment visits, but Plaintiff states the ALJ failed to "reconcile this finding that Plaintiff presented as anxious and hopeless during a July 2018 appointment with Dr. Griffin," and in August 2018 she presented as "anxious" and as having "fairly significant anxiety and insomnia" with Dr. Walk. (ECF No. 10, PageID.1303, citing PageID.386, 474.) However, the fact that she presented as anxious does not negate the fact that the July 2018 medical records also indicate that she had normal orientation, no agitation, appropriate mood and affect, normal insight, normal judgment, and no suicidal ideation. (ECF No. 6-1, PageID.386.) Indeed, notes from the same date indicate that while Plaintiff presented with depressed mood, difficulty concentrating, diminished interest or pleasure, excessive worry, fatigue and feelings of guilt, she also denied anxious or fearful

11

thoughts, denied difficulty falling asleep, loss of appetite, restlessness, or thoughts

of death or suicide.  (ECF No. 6-1, PageID.383.)  These notes also indicate that

"[t]here is an improvement of initial symptoms."  (*Id.*)

Likewise, while Plaintiff presented as anxious at her July 2018 appointment,

the office notes also indicate normal neurological findings related to level of

consciousness, orientation, memory, sensory, balance, and coordination, and that

she had a normal orientation to time, place, person and situation, and normal

insight and judgment.  (ECF No. 6-1, PageID.474.)  Thus, the ALJ's comment that

Plaintiff's behavior and moods were normal did not mischaracterize the record, but

is instead based on actual medical notations.  Further the ALJ did not ignore

Plaintiff's reports of severe anxiety symptoms, but specifically mentioned them in

her report.  (ECF No. 6-1, PageID.839.)  As Defendant points out, it is not material

that the ALJ's summary of the medical records did not appear in the exact section

discussing her behavior and moods, and the Court can review the entirety of the

ALJ's decision in determining the supportability and consistency of her opinion.

*See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (citing

*Forrest v. Commissioner of Social Security*, 591 F. App'x 359, 366 (6th Cir. 2014)

("No doubt, the ALJ did not reproduce the list of these treatment records a second

time when she explained why Dr. Bell's opinion was inconsistent with this record.

But it suffices that she listed them elsewhere in her opinion.").

Plaintiff next takes issue with the ALJ's rejection of Dr. Griffin's finding that Plaintiff had marked limitations in social functioning during the relevant time period.  (ECF No. 10, PageID.1304.)  The ALJ noted:

> In terms of the claimant's social function, Dr. Griffin indicated the claimant had *marked* limitations in this area. Dr. Griffin's opinion is not consistent with the reports made by the claimant and is not supported by Dr. Griffin's own treatments notes. Specifically, the claimant and her family reported that the claimant had started to isolate and withdraw from social contact. However, despite her alleged limitations, the claimant also described being able to venture out in public to go shopping and attend her appointment.

(ECF No. 6-1, PageID.841 (emphasis in original).)  According to Plaintiff, this "description of activities vastly overstates [Plaintiff's] report, while leaving off important context."  (ECF No.10, PageID.1304.)  Plaintiff argues that the ALJ failed to consider qualifications of those activities, that is, Plaintiff's claim in her own post-DLI function report that she could only shop in early morning hours, and that she shopped with her family to feel safe, that she was afraid of getting hurt when she went to public places alone, and that she could go alone only to her mother's house.  (ECF No. 10, PageID.1305.)  Plaintiff suggests that though the ALJ mentioned she was able to attend her doctor's appointments, the record indicates that those appointments "were also often scheduled early in the morning."  (*Id.*)  The Court should disagree, however, that Plaintiff points out any mischaracterizations of the record.  Plaintiff has not identified any false or misleading statement in the ALJ's report; she simply disagrees with the weight

those activities should have.  The noted activities are indeed supported by the record, and further supported by the ALJ's observation that "[i]t did not appear [Plaintiff] was too anxious about leaving her home because [she] reported that she was planning a trip to the outer banks of North Carolina in March 2017." (ECF No. 6-1, PageID.839.)

Similarly, Plaintiff argues that the ALJ improperly rejected Dr. Griffin's assessment of "marked limitations" in the category related to Plaintiff's concentration, persistence, and pace.  (ECF No.10, PageID.1307.)  The ALJ rejected Dr. Griffin's assessment as inconsistent with her reports that she could mow her two-acre yard with a push mower and operate a motor vehicle.  (ECF No. 6-1, PageID.842; *see also* ECF No. 6-1, PageID.511.)  Plaintiff argues that this finding "ignores additional explanations [Plaintiff] provided to the ALJ about those activities." (ECF No. 10, PageID.1307.)  Plaintiff contends that her testimony qualified those activities, by her indication that six miles was the longest she could drive before she would get anxious and driving became "just hard," and that she had testified that performing household chores (like mowing) was part of her OCD. (*Id.*, PageID.1307-08.)  Plaintiff argues that the ALJ failed to take these qualifications into account, which undercuts her reasoning.

However, Plaintiff's arguments do not point to any remarkable failing by the ALJ.  The point of the ALJ's finding is that she could maintain concentration in

order to operate a motor vehicle, which is noteworthy whether she is driving for 1,

6, or 60 miles—presumably, no matter how far one drives, there is a requisite level

of concentration required to safely operate a motor vehicle.  Likewise, the ability

and habit of mowing a lawn shows skills of concentration, persistence and pace,

whether or not her alleged OCD contributed to those skills.  (Indeed, as Defendant

points out, the ALJ noted that there was no evidence that she was ever diagnosed

with OCD and found that it was not an impairment during the timeframe at issue.)

(ECF No.18, PageID.1346.)

Plaintiff further argues that the ALJ failed to note that Dr. Griffin had

written that Plaintiff was obsessed with the idea of being called for jury duty, that

she had a lot of anxiety leaving the house or being alone in public, that she was

unsuccessful on two occasions going to the gym, and that she presented with

excessive worry and restlessness.  (ECF No. 10, PageID.1308-09.)  But, as even

Plaintiff acknowledges, "[a]lthough required to develop the record fully and fairly,

an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure

to cite specific evidence does not indicate that it was not considered."  *Simons v.

Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d

433, 436 (8th Cir. 2000)). And, moreover, the ALJ did not find that Plaintiff had *no*

limitations in social functioning and in maintaining concentration, persistence and

pace. The ALJ simply found Dr. Griffin's assessment that she had *marked*

limitations inconsistent with the record, and instead found that her limitations in those areas were *moderate.* Plaintiff has not shown that this finding was in error.

The facts of this case are not analogous to those in *Wilson v. Comm'r of Soc. Sec.*, No. 5:18-CV-335, 2019 WL 366692 (N.D. Ohio Jan. 30, 2019), which Plaintiff cites as support. (ECF No. 10, PageID.1306-1307). In *Wilson*, the ALJ improperly relied on the claimant's alleged dog-walking as evidence of his ability to go into public places when, in reality, the claimant (who suffered from agoraphobia) only took his dog to his side yard and then quickly returned indoors. *Wilson*, 2019 WL 366692, at *10. In *Wilson*, the ALJ had indeed mischaracterized the claimant's testimony, while in each of the examples Plaintiff cites, there is no mischaracterization; instead, Plaintiff seeks to nit-pick, or deconstruct each example in an attempt to undermine the ALJ.

Finally, the Court should reject Plaintiff's argument that the ALJ's finding about absenteeism was in error. The ALJ found as follows:

> In terms of the claimant's work capacity, Dr. Griffin assigned no specific mental work capacities. However, Dr. Griffin indicated the claimant would miss more than six days of work,[1] implying the claimant would have

---

[1] Dr. Griffin had indeed indicated that Plaintiff would be likely to miss six or more days of work per *month* in a five day, 40-hour per week, work month. (ECF No. 6-1, PageID.742.) Defendant's brief inaccurately states that Dr. Griffin found Plaintiff would be likely to miss six or more days of work per *week*, (ECF No. 18, PageID.1341), of which Plaintiff attempts to make an issue, (ECF No. 19, PageID.1356). This is not an issue. It is a typo. There appears to be no dispute— nor is it logical, to think—based on Defendant's brief, that the Commissioner

attendance issues that would preclude all work activity. This opinion is not consistent with what was reported by the claimant and is not supported by what was observed by Dr. Griffin. Specifically, the claimant described having a schedule. She had three children who depended upon her. The claimant allegedly initiated activities seven days a week. She reportedly made dinner three days a week. The claimant could monitor her own medications. She could plan activities months in advance (1E). In terms of Dr. Griffin's own treatment notes, there was no evidence that the claimant regularly canceled or missed her appointments. *There is simply no evidence to support finding the claimant is so undependable.*

(ECF No. 6-1, PageID.842 (emphasis added).)  Plaintiff specifically takes issue with the ALJ's use of the phrase stating there was "no evidence" to find her so undependable.  To argue error, she relies on *Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127 (E.D. Mich. Mar. 26, 2014).  (ECF No. 10, PageID.1310.)  In *Riser*, the ALJ had erred by saying that "none of the claimant's medical record indicate that claimant [was] a candidate for back or neck surgery," when that statement was directly contradicted by the medical records.  *Riser*, 2014 WL 1260127, *13.  Plaintiff argues that the ALJ in this case similarly erred when reviewing Dr. Griffin's opinion about the degree of absenteeism Plaintiff would likely experience in the workforce.  Plaintiff argues that, like *Riser*, the ALJ erred by stating there was *no* evidence, because Plaintiff contends that her significant and increasing fear of leaving her home was evidence that the ALJ allegedly ignored.  (ECF No. 10, PageID.1310.)  However, in *Riser*, there was objective

---

believed the absenteeism finding was six days *per week* in a five day work week. (*See* ECF No. 6-1, PageID.742 ("on a five day a week, 40-hour per week basis".)

evidence which the ALJ overlooked by stating "none" of the medical records indicated her candidacy for surgery. Here, the ALJ is speaking in subjective terms when stating that there is "no evidence" to find Plaintiff "*so* undependable." And, in truth, there is not. Plaintiff has shown, at most, that her fears *suggest* she *might* be undependable. But there was nothing in the record to indicate a history of missed appointments or the like to support a high degree of absenteeism at work.

In sum, the Court should reject Plaintiff's attempts to find error with the ALJ's treatment of Dr. Griffin's opinion. The ALJ's rationale for finding the opinion of treating physician, Stacie Griffin, unpersuasive was supported by substantial evidence, and the Court should reject Plaintiff's argument that the ALJ mischaracterized or ignored relevant evidence that was consistent with Dr. Griffin's opinion. Indeed, the ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953). In Plaintiff's case, the ALJ did not ignore or mischaracterize information; she just weighed information differently than Plaintiff would have liked.

Although Plaintiff attempts to show error in the ALJ's analysis, in effect she is asking the Court to re-weigh the evidence. The narrow scope of judicial review

of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the Court's judgment for that of the ALJ, which is essentially what Plaintiff is asking this Court to do. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Where, as here, "the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509 (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

### 2. Plaintiff's subjective allegations and failure to seek specialized psychiatric care during the relevant period

Plaintiff next challenges the ALJ's finding that her subjective allegations were not fully consisted with the evidence. (ECF No. 10, PageID.1310.) Specifically, Plaintiff takes issue with the fact that the ALJ mentioned three times that she had not "engaged in any specialized mental health treatment during the period at issue, suggesting this was a significant factor in [the ALJ's] decision making." (*Id.*) Plaintiff cites to a variety of cases which stand for the proposition that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." (ECF No. 10, PageID.1311-1312 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) and others). Indeed, as Plaintiff points out, "ALJs must be careful not to assume that a

patient's failure to receive mental-health treatment evidences a tranquil mental state.  For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."  *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)).

While the Court should take note of the import of these cases, the Court must also be mindful that it is not the Court's role to evaluate the credibility and subjective allegations of a claimant's testimony.  "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").

Plaintiff argues that the ALJ failed to consider reasons why she did not seek mental health treatment: that the ALJ did not address Plaintiff's trauma history, reported fear her husband would find out she had been raped, or any other reasons why she did not seek treatment until 2019.  (ECF No. 10, PageID.1312.)  Plaintiff further contends that the ALJ's failure to consider these reasons violates Social

Security Ruling 16-3, which states, "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

However, a fair reading of the ALJ's report is not that she negatively noted a failure to *seek* treatment, but that she found noteworthy that specific mental health treatment was not *necessary*. The ALJ stated, "[t]here was no evidence she had required inpatient psychiatric care or had engaged in formal mental health care during the timeframe at issue." (ECF No. 6-1, PageID.839.) The ALJ also wrote that a few days after Plaintiff's Title II Insurance had lapsed, "Dr. Griffin noted that despite the severe limitations described by the claimant, the claimant was not engaged in mental health therapy. *Dr. Griffin did not recommend a psychiatric evaluation and observed the claimant's anxiety and depression symptoms were controlled on Buspirone and Effexor in October 2018*." (ECF No. 6-1, PageID.839 (emphasis added).) Thus, the crux of the ALJ's observation was not a failure to *seek* treatment, but a lack of evidence showing the necessity for it. And indeed, the medical records suggest that Plaintiff's symptoms were fairly static during the

relevant time period and being treated with little to no adjustments in her medication.

Contrary to Plaintiff's argument, this analysis is more akin to Defendant's authority than Plaintiff's cited cases. Defendant submits, and the Court should agree, that the ALJ's treatment in this case is similar to that in *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675 (6th Cir. 2013), where the Sixth Circuit held, "The administrative law judge also noted that plaintiff refused more aggressive treatment, eventually even foregoing the steroid injections and pain medication and choosing to rely only on over-the-counter medications, with no explanation. *This conservative treatment approach suggests the absence of a disabling condition*." *Id.* at 678 (emphasis added).

Overall, "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. While "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence," *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997), the record here clearly establishes substantial evidence to support the ALJ's assessment.

### E.    Conclusion

Plaintiff has not shown legal error in the ALJ's determination.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's decision.

The Court further ORDERS expedited briefing on any objections.  **Any objections must be filed on or before September 6, 2024, and a response to the objections must be filed on or before September 17, 2024.**

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, and failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge. **The Court finds good cause to order expedited briefing on any objections.  As**

23

**such, any objections must be filed on or before September 6, 2024, and a**

**response to the objections must be filed on or before September 17, 2024.**

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. The opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 26, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE